# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF ARIZONA

In re ) Chapter 7 Proceedings
)
**ROBERT W. MANGOLD and** ) Case No: 2:12-bk-16858-DPC
**MICHELE M. MANGOLD,** )
)
Debtors. )
_____ )
**MICHELE MANGOLD,** )
) **UNDER ADVISEMENT RULING**
Movant, ) **REGARDING POST-NUPTIAL**
) **AGREEMENT AND MICHELE**
v. ) **MANGOLD'S LIABILITY TO**
) **THOMAS J. PICCOLO**
**THOMAS M. PICCOLO, JOSHUA T.** )
**GREER, and MOYES, SELLERS AND** )
**HENDRICKS,** ) [NOT FOR PUBLICATION]
)
Respondents. )
_____ )

Thomas M. Piccolo ("Piccolo") holds a nondischargeable judgment against Robert M. Mangold ("Mr. Mangold") and the marital community of Mr. Mangold and Michele Mangold ("Ms. Mangold"). Ms. Mangold contends her Post Nuptial Agreement ("Post Nuptial Agreement") with Mr. Mangold prevents Piccolo from collecting on his judgment by garnishing wages earned by her after her bankruptcy discharge and after execution of the Post Nuptial Agreement. Piccolo contends the Post Nuptial Agreement is unenforceable as it is a sham contract and a fraudulent agreement. Piccolo also contends that, where a creditor obtains a nondischargeable judgment against a marital community, under Arizona law both spouses remain liable on that obligation even if the marital community is properly dissolved by agreement or by a valid court decree

dissolving the marriage.

This Court now finds that, under the facts of this case, the Post Nuptial Agreement is unenforceable and avoidable. The Court also finds that sole and separate property acquired by an "innocent" spouse is not forever liable for nondischargeable debts incurred by the "guilty" spouse during the existence of their marital community.[1]

## I. BACKGROUND

1. On June 25, 2010, a judgment was entered by the Arizona Superior Court, Maricopa County ("State Court") in favor of Piccolo and against Mr. Mangold in the amount of $1,625,787.26 plus interest at the rate of 10% per annum in case number CV2009-013428 ("State Court Action"). *See* Exhibit A attached to the Notice of Errata filed at docket number 9 in adversary case number 2:12-ap-01863-DPC ("Adversary Proceeding").

2. Mr. and Ms. Mangold filed their joint chapter 7 bankruptcy on July 27, 2012 ("Petition Date") at case number 2:12-bk-16858-DPC (DE[2] 1).

3. On November 1, 2012, Guaranty Solutions, LLC (assignee of Piccolo) filed an adversary proceeding against Mr. and Ms. Mangold seeking to hold certain obligations nondischargeable under 11 U.S.C. §§ 523(a)(2), (4), (6) and (19).[3] *See* docket entry number 1 in the Adversary Proceeding. On November 8, 2013, the Court signed the parties' stipulated order substituting in Piccolo as the party plaintiff. *See* docket entry 35 in the Adversary Proceeding. On December 3, 2014, this Court entered judgment ("Community Judgment") in favor of Piccolo and against Mr. Mangold's sole and

---

[1] This Order sets forth the Court's findings of fact and conclusions of law under Rule 7052 of the Rules of Bankruptcy Procedure.

[2] "DE" refers to docket entries in the administrative file concerning this chapter 7 case.

[3] Unless indicated otherwise, statutory citations herein refer to the U.S. Bankruptcy Code ("Code"), 11 U.S.C. §§ 101-1532 and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

separate property and against the property belonging to the marital community of Mr. and Ms. Mangold. *See* Adversary Proceeding docket number 69.

  4. On February 18, 2015, this Court entered a Stipulated Judgment against Ms. Mangold in the amount of $10,000 ("Ms. Mangold Judgment"). *See* Adversary Proceeding docket number 84. The Ms. Mangold Judgment has been fully satisfied. *See* the Satisfaction of Judgment at Adversary Proceeding docket number 227.

  5. Ms. Mangold received her bankruptcy discharge on November 13, 2012. DE 23. At that time, Mr. Mangold was also discharged of all pre-petition debt except the Community Judgment.

  6. On October 1, 2015, Mr. and Ms. Mangold entered into the Post Nuptial Agreement. *See* Ex 1 and Ex 4.[4]

  7. As a part of his continuing efforts to gain satisfaction of the Community Judgment, Piccolo garnished Ms. Mangold's wages from Expert Realty[5] and has sought to conduct post-judgment discovery from Ms. Mangold so as to locate assets of Ms. Mangold from which the Community Judgment could be paid.

  8. Claiming Piccolo violated her discharge injunction, Ms. Mangold filed a Motion for Sanctions for Violation of 11 U.S.C. § 524 ("Sanctions Motion") against Piccolo and his attorney, Joshua T. Greer ("Greer") and Greer's law firm, Moyes, Sellers and Hendricks (the "Law Firm"). Ms. Mangold's November 21, 2017 Sanctions Motion (DE 67) contends her wages from Expert Realty are her sole and separate property and, therefore, not available to Piccolo for collection on his Community Judgment. Piccolo responded to the Sanctions Motion on November 27, 2017 (DE 68). Ms. Mangold replied on December 21, 2017 (DE 71).

---

[4] All exhibits admitted at the March 27, 2018 trial of this matter shall be hereinafter referred to as "Ex ___".

[5] Expert Realty is an entity created by the Mangolds but allegedly owned by just Ms. Mangold as her sole and separate property.

9. Piccolo filed his December 12, 2017 Motion for Sanctions Pursuant to Rule 9011 ("9011 Motion") (DE 69). Ms. Mangold responded on December 21, 2017 (DE 72) and Piccolo replied the day after Christmas (DE 74).

10. On January 11, 2018, this Court held its initial hearing on the Sanctions Motion and the 9011 Motion (DE 76). At that hearing, the Court established a schedule for additional briefing and set an evidentiary hearing for March 27, 2018.

11. On January 25, 2018, Piccolo filed his Memorandum Regarding Post-Nuptial Agreement (DE 78). Ms. Mangold filed a Statement of Facts on February 15, 2018 (DE 79). Piccolo filed a reply on March 9, 2018 (DE 80). A Joint Pretrial Statement was filed on March 20, 2018 (DE 85) and then was amended on March 26, 2018 (DE 88). Ms. Mangold filed her Final Reply Brief on March 21, 2018 (DE 87) and Piccolo filed a Notice of Errata on March 27, 2018 (DE 89).

12. An evidentiary hearing was conducted by the Court on March 27, 2018. Ms. Mangold, Mr. Mangold and Donna Navarro testified at trial. When the trial concluded, the Court took this matter under advisement.

13. On April 5, 2018, the parties filed a Stipulation for Entry of Order Regarding Asset (DE 92) and the Court entered an order that day approving the Stipulation (DE 94). In essence, the Stipulation notes the parties agree that all assets owned by the Mangolds as of October 1, 2015 (the date the Post Nuptial Agreement was executed), remain subject to collection by Piccolo in connection with his Community Judgment.

## II. **JURISDICTION**

This Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 157(b) and 1334.

## III. ISSUES

A. Whether the Post Nuptial Agreement is enforceable.

B. Whether the Community Judgment is enforceable against Ms. Mangold's sole and separate property.

## IV. ANALYSIS

Mr. Piccolo's Community Judgment exceeds $1.6 million. That Community Judgment is nondischargeable and is subject to Piccolo's collection efforts against the marital community assets of Mr. and Ms. Mangold as well as the sole and separate assets of Mr. Mangold. Post-petition community property acquired by the Mangolds is liable for Piccolo's Community Judgment. *See Valley Nat'l Bank v. LeSueur (In re LeSueur)*, 53 B.R. 414 (Bankr. D. Ariz. 1985) *and In re Rawlinson*, 322 B.R. 879, 844-885 (Bankr. D.Ariz. 2005). The Community Judgment is <u>not</u> the sole and separate obligation of Ms. Mangold. *See Tsurukawa v. Nikon Precision, Inc.* (*In re Tsurukawa*), 258 B.R. 192 (9th Cir. B.A.P. 2001). None of these facts or legal issues are in dispute.

The controversy between these parties lies with Ms. Mangold's contention that the Post Nuptial Agreement dissolved the Mangolds' marital community and, since that date, all property acquired by her constitutes her sole and separate property. Ms. Mangold does acknowledge, however, that property which was transferred to her or was acknowledged in the Post Nuptial Agreement as belonging to her remains available to collection efforts by Piccolo. *See* DE 94. Piccolo claims the Post Nuptial Agreement is unenforceable and avoidable as a fraudulent transfer and, therefore, did not dissolve the Mangolds' marital community. For the reasons stated below, the Court agrees with Mr. Piccolo. Piccolo further suggests that any property acquired hereafter by Ms. Mangold is also available for Piccolo's Community Judgment collection efforts. For the reasons stated below, the Court disagrees.

## A. The Post-Nuptial Agreement.

The Post Nuptial Agreement is invalid for two reasons. First, this Court finds the Mangolds' intention in executing the Post Nuptial Agreement was improper as they were principally attempting to avoid payment to Piccolo. Under Arizona's version of the Uniform Fraudulent Transfer Act ("UFTA") (A.R.S. §§ 44-1001, *et seq*.), transfers by a debtor are invalid and avoidable if they were made with the intent to hinder, delay or defraud creditors. The Court finds this was exactly the Mangolds' intent in executing the Post Nuptial Agreement.

Second, this Court finds the Mangolds entered into the Post Nuptial Agreement with no intention of adhering to the terms of the Post Nuptial Agreement. The Court in *Arizona Cotton Ginning Co. v. Nichols*, 454 P.2d 163, 166 (Ariz. 1969) explains the consequences where parties to a contract have no intention of being bound by the terms of that contract:

> Where neither party intends that a contract shall result by what is done, no valid contract results; and where both parties actually intend that there shall be no contract and that intent is known and admitted, there is no occasion to consider the existence or nonexistence of any objective manifestation to the contrary . . . . Where parties executed what on its face purported to be a written contract, at execution neither party intended it to be a contract, and therefore the whole transaction was a sham.

*Id.*

### 1. The Mangolds' Agreement Was Entered Into With the Intent to Hinder, Delay or Defraud Piccolo.

Ms. Mangold admitted in her pleadings and at trial that her primary motive for executing the Post Nuptial Agreement was to avoid her liability on garnishment on Piccolo's Community Judgment. *See* DEs 87 and 91, Trial Audio Recording at 9:29 a.m. She also pointed to a more theoretical reason, namely her desire to protect herself from possible future community judgments that could result from her husband's future

conduct.[6]

The Court finds Ms. Mangold signed the Post Nuptial Agreement intending to avoid the consequences of the Community Judgment. Parties seeking to avoid exposing their future community property to existing community judgments by entering into post-marriage agreements to declare such property sole and separate property of each spouse have run afoul of fraudulent transfer laws. *See In re Beverly*, 374 B.R. 221, 234 (B.A.P. 9th Cir. 2007), *aff'd in part, dismissed in part*, 551 F.3d 1092 (9th Cir. 2008). As one court noted, to consider transmutation of property interests not subject to the UFTA would give short shrift to the UFTA. *State ex rel. Indus. Comm'n of Arizona v. Wright*, 43 P.3d 203, 207 (Ariz. Ct. App. 2002).

In determining whether the Post Nuptial Agreement was entered into by the Mangolds for an improper purpose, i.e. fraud, fraudulent intent, a fraudulent objective, or even resulting in a fraudulent transfer or conveyance in this case, the Court looks to the UFTA for guidance. In Arizona, the UFTA is codified in Arizona's Revised Statutes §§ 44-1001, *et seq*. It is not necessarily the transaction itself, but rather the purpose behind the transaction, that brings it within the inquiry of A.R.S. § 44–1004. *State ex rel. Indus. Comm'n of Arizona v. Wright*, 43 P.3d 203, 207 (Ariz. Ct. App. 2002). Sections

---

[6] Ms. Mangold testified she was informed by counsel that divorcing Mr. Mangold would not protect her future earnings from Piccolo. The Court does not presume this advice was correct, nor was the rationale for this advice adequately explained in the pleadings or at trial. However, the Court does not mean to encourage Ms. Mangold to divorce Mr. Mangold in an effort to free her from Piccolo's financial grip. Encouraging or suggesting one divorce their mate is not the job of the courts. *See Spector v. Spector*, 531 P.2d 176, 181 (Ariz. 1975) (Agreements between spouses that provide for or tend to induce divorce or separation, are contrary to public policy).

44-1004[7] and 1005[8] aid courts in ascertaining fraudulent intent. The badges of fraud outlined in § 44-1004(B) are factors courts should consider when looking at whether the purpose of contracting parties reflect their fraudulent intent. Badges of fraud are merely signs or marks of fraud from which intent may be inferred. *Gerow v. Covill*, 960 P.2d 55, 63 (Ariz. Ct. App. 1998), *as amended* (Aug. 26, 1998) (citing *Torosian v. Paulos*, 313 P.2d 382, 388 (Ariz. 1957)); A.R.S. § 44–1004.

> [T]hey are facts having a tendency to show the existence of fraud, although their value as evidence is relative and not absolute . . . . Often a single one of them may establish and stamp a transaction as fraudulent. When, however, several are found in the same transaction, strong, clear evidence will be required to repel the conclusion of fraudulent intent.

*Torosian*, 313 P.2d at 388.

The Mangolds' Post Nuptial Agreement sought to put collectible assets out of the reach of Piccolo in a manner that hindered, delayed or defrauded him. The Mangolds'

---

[7] **A.R.S. Section 44-1004. Transfers fraudulent as to present and future creditors**
**A.** A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation under any of the following:
1. With actual intent to hinder, delay or defraud any creditor of the debtor.
2. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor either:
(a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.
(b) Intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.
**B.** In determining actual intent under subsection A, paragraph 1, consideration may be given, among other factors, to whether:
1. The transfer or obligation was to an insider.
2. The debtor retained possession or control of the property transferred after the transfer.
3. The transfer or obligation was disclosed or concealed.
4. Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
5. The transfer was of substantially all of the debtor's assets.
6. The debtor absconded.
7. The debtor removed or concealed assets.
8. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
9. The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.
10. The transfer occurred shortly before or shortly after a substantial debt was incurred.
11. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

[8] A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

intent was to remove community wages earned by Ms. Mangold and other future interests acquired by her out of Piccolo's reach by converting their future community assets to her sole and separate ownership. This transfer to Ms. Mangold was without consideration to Mr. Mangold. Several of the § 44-1004(b) badges of fraud are implicated by the Mangolds' actions:

1. This was an insider transaction;
2. At the conclusion of the transaction, both parties maintained complete control over all current and future assets;
4. The existence of the Community Judgment precipitated the Mangolds' execution of the Post Nuptial Agreement;
5. The transfer to Ms. Mangold alone of important wage rights together with the creation of the Expert Realty entity through which she was to earn revenue;
9. The Mangolds were insolvent at the time of the transaction; and
10. This transaction occurred shortly after satisfaction of the Ms. Mangold Judgment.

But for the Mangolds' desire to evade Piccolo's Community Judgment, the Mangolds would not have entered into the Post Nuptial Agreement. This Court finds the Post Nuptial Agreement is avoidable as both an intentional and constructive fraudulent transfer under §§ 44-1004 and 1005 of Arizona's UFTA.

**2.** <u>**The Mangolds Did Not Intend to Be Bound by Their Agreement.**</u>

Ms. Mangold testified that the written terms of the Post Nuptial Agreement did not match her understanding of what the Post Nuptial Agreement was to achieve relative to the Mangolds' community property existing at the time of execution and as it pertained to the married couples' property interests in the future. DE 91, Trial Audio Recording at

9:47-9:53 am. Specifically, Ms. Mangold said that the Post Nuptial Agreement should not alter community property interests or any interests that were affected by a judgment. *Id.* However, Ms. Mangold conceded that the Post Nuptial Agreement did not actually read consistent with her understanding in this regard. Moreover, there are two versions of the Post Nuptial Agreement, both reflecting the same date and signatures. *See* Exs. 1 and 4. It was not clear to the Court which Post Nuptial Agreement was the controlling version. Ms. Mangold conceded she also did not know which version controlled. *See id.* and DE 91, Trial Audio Recording at 9:47-9:53 a.m.

The evidence before this Court demonstrates that, after execution of their agreement, the Debtors' continued to conduct their financial affairs in the same manner as before the Post Nuptial Agreement was executed. All purchases made and expenses and costs incurred by the Mangolds continued to be paid by Mr. Mangold. Mr. Mangold was not reimbursed by Ms. Mangold for covering her share of these payments nor did the Post Nuptial Agreement require he be reimbursed by Ms. Mangold for his expenditures on her behalf. Mr. and Ms. Mangold also continued to treat their income as jointly owned. The Mangolds never intended to dissolve their marital community. Not only did Mr. and Ms. Mangold's actions and course of conduct show that they did not actually intend to carry out the terms of the Post Nuptial Agreement, but the property acquired by Ms. Mangold and Mr. Mangold after execution of the Post Nuptial Agreement was so fully commingled that any separate identity it could have had was lost. *See Potthoff v. Potthoff*, 627 P.2d 708, 713 (Ariz. Ct. App. 1981) (A transmutation of separate property occurs where commingling of property is such that the identity of the property as separate or community is lost and it therefore becomes community).

The Court finds the Mangolds did not abide by, or ever intend to abide by the terms of the Post Nuptial Agreement, regardless of which version of the Post Nuptial Agreement the parties held up as a shield to Piccolo's collection efforts. The Mangolds'

primary intent in executing the Post Nuptial Agreement was to seek to shelter assets acquired by them after execution of that agreement and to place Ms. Mangold's future income out of the reach of Piccolo's Community Judgment.

### 3. **Summary As To The Post Nuptial Agreement**

The Post Nuptial Agreement is invalid and unenforceable because this Court finds the Post Nuptial Agreement was entered into with fraudulent intent at a time when the Mangolds were insolvent and where Mr. Mangold received no consideration for the transfer of these future community property rights. The Post Nuptial Agreement is hereby avoided as both an intentional fraudulent transfer and a constructive fraudulent transfer under §§ 44-1004 and 1005 of the Arizona Revised Statutes. Moreover, Mr. and Ms. Mangold did not have the intent to be bound by the Post Nuptial Agreement, either at the time it was executed or thereafter. The Court finds the Post Nuptial Agreement is void as a sham transaction. Because the Post Nuptial Agreement is unenforceable, the Mangolds' community was never dissolved. Their marital community remains intact to this day. Ms. Mangold's wages in question remain property of the Mangolds' community and are available for garnishment by Piccolo as he seeks to enforce the Community Judgment.

### B. **Sole and Separate Property of Ms. Mangold.**

Ms. Mangold cites Bankruptcy Judge Case's decision in the Arizona bankruptcy matter of *Taylor Freezer Sales of Arizona, Inc. (In re Oliphant),* 221 B.R. 506 (Bankr. D. Ariz. 1998) for the notion that, if a creditor is successful in a nondischargeability case against a divorced debtor, that creditor/plaintiff "could only then recover from debtor's post-divorce separate property." DE 71 at page 4 of 33. The Court does not read *Oliphant* to support Ms. Mangold's position. In *Oliphant*, the court denied the "innocent"

spouse's motion to dismiss a nondischargeability adversary proceeding in her bankruptcy holding there were adequate material allegations supporting the creditor's claim that the debtor was not "innocent" so that the debtor's § 523 liability needed to be tried to the court.

For his part, Piccolo contends that neither a valid post nuptial agreement between the Mangolds nor a non-collusive divorce could free Ms. Mangold of her community's debt to Piccolo. Piccolo points to *Community Guardian Bank v. Hamlin*, 182 Ariz. 627, 631-32 (App. 1995) *corrected* (7-10-1995) for the proposition that, upon the dissolution of a marital community, both spouses become liable for the debts of the community as successors to the marital community. The *Hamlin* court specifically held "…both spouses remain jointly liable for the community obligations after divorce." I*d* at 631.[9] *Hamlin*, of course, was not a bankruptcy case nor did either spouse in *Hamlin* obtain a bankruptcy discharge. Here, however, Ms. Mangold's sole and separate debts were discharged. She has no sole and separate liability to Piccolo. After satisfaction of the Ms. Mangold Judgment, Piccolo has not been entitled to collect from the sole and separate property of Ms. Mangold. To date, this point has been moot as Ms. Mangold has not owned any sole and separate property. Hereafter, if and when she acquires sole and separate property, a community debt incurred by Mr. Mangold alone may not be satisfied from the post discharge separate property acquired by Ms. Mangold. The language of the Community Judgment itself acknowledges this fact by indicating that

---

[9] This Court questions whether *Hamlin* overstated its holding relative to the spouse who did not incur the community debt at issue in that case. As to that spouse, this Court contends her liability on that community debt does not make her sole and separate property liable for the community debt but, rather, extends post-divorce only to the extent of the community property (or the value of that property) which she received from her divorce. After all, the community's creditors were never entitled to collect from her sole and separate property and such creditors would be disadvantaged by the divorce disposition only to the extent she left the community with community property which should be available to pay the community's creditors. Moreover, she benefitted from the incurrence of the community debt to the extent she walked away from the community with community assets that should have been delivered to the community's creditors. Furthermore, if the creditors wanted her sole and separate property to be available to satisfy their claims, they could and should have had her personally (i.e. solely and separately) sign for the debt. If the community debt was a tort incurred by the debtor's spouse, the tort victim would have no claim against the innocent spouse's sole and separate property, so why should the post divorce sole and separate property of the debtor stand good for the tortfeasor's liability?

judgment is against Mr. Mangold's sole and separate property and the community property of the Mangolds.

Piccolo also points to the case of *In re Kimmel*, 378 B.R. 630 (9th Cir. B.A.P. 2007), not because it is factually similar to the case at bar but because of dicta in that case suggesting that, upon the filing of a bankruptcy by an innocent spouse, a creditor could have filed a nondischargeable claim to demonstrate the non-filing spouse incurred a nondischargeable debt to that creditor and, once proven, "then 524(a)(3) would not protect after acquired community property." *Id.* at 181. Significantly, *Kimmel* involved a post-nuptial agreement entered into by the spouses many, many years prior to the creditor's efforts to reopen one spouse's discharge. Also, *Kimmel* did not involve a filed §§ 523 or 727 adversary proceeding but, rather, addressed the effect of a community discharge under § 524. *Kimmel* is neither binding on the Court nor persuasive on issues before the Court.

If and when Ms. Mangold's marital community is legally and unavoidably dissolved, thereafter her earnings and legitimately acquired post-marital dissolution property will become her sole and separate property. Ms. Mangold is not solely and separately liable to Piccolo on his Community Judgment and Ms. Mangold has received a discharge of her sole and separate debts. That sole and separate property acquired after her bankruptcy discharge will not be available to Piccolo in collection of his Community Judgment nor would that Community Judgment become her sole and separate liability. In short, should Ms. Mangold ever acquire sole and separate property hereafter, that property would not be available for involuntary collection remedies on Piccolo's Community Judgment. *See In re Rawlinson* at 883-885.[10]

---

[10] This Court is aware of the irony of its criticism of dicta contained in the *Kimmel* case when Section IV (B) of this Order is also dicta. However, the parties asked for direction on this topic and the Court's thoughts in this regard might be of value in the parties' efforts to resolve this long and hard fought battle.

## V. CONCLUSION

The Mangolds' Post Nuptial Agreement is a sham agreement, is unenforceable and is hereby avoided as an actual and constructively fraudulent transfer. However, should Ms. Mangold's community ever be lawfully and unavoidably dissolved by an enforceable post nuptial agreement or separation agreement or by a noncollusive, lawful dissolution of her marriage to Mr. Mangold or if the marital community is dissolved by the passing of her spouse, Ms. Mangold may then acquire sole and separate property which would not be susceptible to collection remedies available to the holder of the Community Judgment.[11]

Based on the foregoing, the Sanctions Motion against Piccolo, Greer and the Law Firm is hereby denied. The 9011 Motion is also denied for the reason that, based on the novelty and complexity of the legal issues presented to the Court and the contested nature of the facts surrounding the Post Nuptial Agreement, Ms. Mangold's counsel's pursuit of the Sanctions Motion and his defense of the 9011 Motion were (1) not presented for any improper purpose; (2) warranted under existing law; (3) his factual contentions had evidentiary support; and (4) his denial of factual contentions were warranted on the evidence.

**DATED AND SIGNED ABOVE.**

To be Noticed through the BNC to:
Interested Parties

Harold Campbell
Campbell & Coombs, PC
1811 S. Alma School Rd., Suite 225
Mesa, AZ 85210

---

[11] Under Arizona's community property laws, property acquired by Ms. Mangold through "gift, devise or descent" would also become her sole and separate property. *See* ARS § 25-213 (A).

| | |
|---|---|
| 1 | Joshua T. Greer<br>Moyes Sellers & Hendricks |
| 2 | 1850 N. Central Ave., Suite 1100<br>Phoenix, AZ 85004-4584 |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |